City of Bastrop Mr. Nocori Good morning, Your Honor. Good morning. Your Honor, may it please the Court, my name is Anselm Nocori. I'm with the law firm of Smith and Nocori. I represent the appellants in this matter. Your Honor, we are here this morning asking this Court to reverse the granting of a summary judgment granted by the District Court based on qualified immunity. We think that the District Court made an error in granting qualified immunity to the officers involved in this case. In the granting of qualified immunity, we think or we believe or this Court has said that the Court should look at the circumstances that confronts the officer at the time of the action. Because this is on summary judgment, I'm interested in what are the facts that are undisputed. So my first question is, Mr. Johnson, he's a decedent, right? Correct. Mr. Johnson, was it undisputed that Mr. Johnson was armed when he exited the vehicle? He's not. You're saying there's a dispute in the record that he was carrying a handgun when he exited the vehicle after the stop? There is no dispute. It's not disputed? It's not disputed. Sorry, go ahead. Actually, Your Honor, there's a video in this case that pretty much shows most of the actions that happened. Okay, that he was carrying a gun when he exited the vehicle following the stop? That's correct. Is it undisputed that it was a semi-automatic handgun with an extended magazine? It's not. So that's undisputed. Is it undisputed that he disregarded the officers, the first officer was Green? Officer Green, yeah. That he disregarded the order to stop and put down the gun? It is undisputed. Okay. And is it undisputed that as he fled, there were vehicles passing? It is undisputed. Okay. Uh-oh. I mean, if those aren't disputed, the district court cited this Garcia versus Blevins, and I thought that the takeaway there, the court, our court there, Garcia versus Blevins, you're familiar with that case? Garcia versus Blevins? That's correct. The decision relied on by the district court to give qualified immunity. All right. It seems to say, it said over and over again, if a suspect is armed, is aware police are asking him to put the gun down, but he doesn't, it is not unreasonable, it is not excessive force to shoot. Doesn't it stand for that proposition? You know, it does, but our case is different. I believe our case is different. In Blevins, the suspect was actually facing the officer. He had the gun, and he was actually making moves that the officer interpreted as trying to pull the gun on him. Our case is different in that when Mr. Johnson got out of the vehicle, if you look at the video, Officer Green says, close the door, he closed the door, he says, drop the gun, and he sat there running, and he went in the wrong direction, in the other direction. Sure, but also, to Judge Higginson's point, you're right. I mean, this is a different factual scenario. He's running away. However, don't our deadly force cases say that if a suspect who's armed presents a danger to officers or to others? Well, Your Honor, the issue I was saying that he did not present any threat to the officer or to anybody. First of all— Well, I just asked you if there were bystanders, if there were passing vehicles, and here you have someone running with a gun, disobeying the police officer's orders. Your Honor— Would not an officer have reasonably thought, given those undisputed facts, that there was a danger presented to others? Your Honor, there were passing vehicles on the road, but the suspect, Mr. Johnson, was running in the field on this school compound, which was closed. It's known that that school compound was actually shut down for over a year permanently. And he was running across the field, as the video would show, and there were no other people standing out there. Well, there were people that came out after they had their gunshots, Your Honor. And I think this is what the police might be referring to, that there were people out there. What was the officer supposed to do when you have a suspect who—I mean, the officers had been alerted there that there was someone brandishing a gun, and the suspect is fleeing, the suspect is armed, is not obeying officers' orders. What is the officer supposed to do to protect the public at that point? Your Honor, there are some things that he could have done. For example? For example, Your Honor, the suspect was known. There was no immediate threat to anybody, the officer or any other person. Any threat that was called in no longer exists, because— What is he supposed to do? I'm assuming—I hope you'll assume, maybe you don't—that the officer could use some Correct. Okay, what can he do? But not deadly force, Your Honor. What can he do? Well, if there's no person that is threatened or is in grave danger, Your Honor, they could have caught him later. They could have—because they knew who this person was. He has been identified. There was nobody in immediate danger that required him to stop him with the deadly force. I thought he was running in the direction of McKenzie. Well, that's the second officer. Right. Well, the officer—the second officer came in at a time— Wouldn't Green understandably be worried about a man running? Well, initially, he didn't know that McKenzie was over there. And when McKenzie pulled up, if you look at the video, Mr. Johnson immediately turned right and started going the other way. He went away from McKenzie. If you look at the video, he turned right. He was about maybe 10 or more yards. Now, McKenzie pulled up because he heard over the radio that there were shots fired. And Mr.—Officer Green said there were shots fired. He was in foot pursuit. And that this suspect was running towards that direction. In terms of notice to Green that he couldn't use deadly force, what's your best case? Pardon, Your Honor? What's the strongest case you've got that Green would know he can't use deadly force as to a suspect fleeing with a gun? Your Honor, the Tennessee v. Ghana matter says that even though— That's a famous case. Was the suspect in that case armed with a gun? No, Your Honor. But I think this court has said that that same situation could apply to suspects that were also armed. And when did we say that? Excuse me, Your Honor. I think your brief cited Colvie Carson, but that's a case where the fellow didn't know the police were there and there were no commands, right? I'm not trying to—you may have a better case, but— Well, that's— That's not exactly the case I'm referring to, Your Honor. But while you're thinking about it, in this case, how long— Why don't we let Mr. McQuarrie make his own argument? So far, he's spent most of his time responding to questions. I like to ask questions. He's got his brief argument. This is just a general comment, so— I don't mind questions, Your Honor. You want to know what's on our mind, probably. If that will help you understand my position, I don't mind questions. But thank you, Judge Jones. You're welcome. But the issue is that eventually, at the deposition much later, Officer Green— I'm talking about actions of Officer Green, what he was faced with at this point. He did testify that he had the suspect point a gun while he was still inside the vehicle. But this was way back after when we did the deposition. He did not bring this up when he was interviewed by the state police, by the Internal Affairs, or any other time. Also, he said he thought that the school was in session. And so there were threats to schoolchildren. The school was probably going to be in session if the school was actually in session. But it is well known in Bastrop at that time that this school had been permanently closed for over a year. In fact, there was testimony that there were demonstrations. There were school board meetings that was going on. So it was well known. So he should have known. So what we would look at, and I think the court said we would look at, is the reasonableness of his actions at the time he was in— Was there a neighborhood nearby as well as the school? Everybody in Bastrop knew that the school was closed. Was there a neighborhood nearby as well as the school? Wasn't it called Eden? The Eden apartment was further up to the right. How far away was it? I'm not sure. It was probably half a mile. He ran back toward those apartments. He was heading towards the apartments. And he actually—I believe the testimony is that they had come out of the apartment and got on Camille Road. When Officer Green made the stop. So there was a 911 call, actually, that he had—there was some individual brandishing a gun in the apartment. There were no shots fired. As you know, Louisiana is an open and carry state. He could carry his gun. And so that doesn't mean that anybody was actually threatened or whatever. But to talk about it, Officer Green only knew that somebody had a gun, had brandished a gun. When he appeared, he saw the gun. But the most important fact in this case is that Mr. Johnson was actually running away. The first officer that got to the scene testified that he saw Mr. Green carrying the gun with the magazine upside down and running away. And that he would have to reposition it in order to use it. So I know he had to make a split-second decision to do that, but that did not call for deadly force in this case. And it's not every situation where there is a gun that deadly force is required to stop the suspect. Whose dash cam covers most of the flight? Are there two dash cams here? There are two dash cams. Officer Green's dash cam covers the initial, the beginning of it. And Officer Green's dash cam covers the later part of the incident. So did he drop the gun and then retrieve it again? No. Okay. The only time he dropped the gun was when he fell down. After he was shot? After he had been shot. I see. And that was on the other part of Officer McKinley's dash cam. All right, sir. We have your argument. Thank you. Mr. Hanna. Police Court. Mark Hanna on behalf of the appellees. Fundamentally, plaintiff has conceded that the material facts are basically captured on the dash cam of Officer Green and Officer McKinney. The facts are very clear that Mr. Johnson jumped out of the vehicle armed with a gun with an extended magazine, disobeyed all commands to drop the gun, disobeyed all commands to remain in the vehicle, and proceeded to run towards a school. Officer Green gave chase and was firing at Mr. Johnson as he pursued him. The dash cam video reveals that not only was Mr. Johnson headed towards a school, but there were vehicles. There is a vehicle that passes directly in front of the path of Mr. Johnson. And as Mr. Johnson gets closer to the school, that vehicle turns around and comes very close to Mr. Johnson's path. That is undisputed. It is undisputed that Mr. Johnson then turns and heads towards Officer McKinney's position. Officer McKinney is positioned in a manner in which he hears gunshots, but he's not sure if his partner, Officer Green, is being fired on or is Mr. Johnson being fired on. Important point, too, as Mr. Johnson turns, he heads right back towards the Eaton Apartments, from which this whole disturbance originated because the call came in that he was brandishing a gun, threatening others with the gun. So who knows what his intentions may have been once he returned to the Eaton Apartments. Is it disputed that he was originally firing the shots, or was that just the inference from the fact that it was a person who jumped into the red truck? Well, there were no shots fired in the Eaton Apartments. Oh, he's just brandishing? He's brandishing the gun. Sorry. Right. So based on all of these facts, argument number one, no constitutional violation. If there's no constitutional violation, then that's the end of the case. And there was no constitutional violation because the use of force is presumptively reasonable here. Officers Green and McKinney had reason to believe that the suspect posed a threat of serious harm to the officers or others in the vicinity. Officer Green and Officer McKinney made very clear in their depositions and is evidenced in the dash cam video that they feared for other citizens in the area. There was an occupied vehicle in Johnson's path. There were vehicles passing along Camel Street where the stop originated. There were fear for other officers as they were engaging with Johnson. Green feared for McKinney. McKinney feared for Green. So we put forward the six factors on page 17 of our brief as to why the use of force is presumptively reasonable. That's argument number one. But why would — is argument one the preferred outcome? Here's my difficulty. I think argument two will just be Blevins' clearly established law actually is to the contrary. Sure. But if we do write it on one, Mr. Wakori, if I'm pronouncing your name correctly, he brought up the fact that Louisiana is an open carry state. So how — if we decide on reasonableness, and tell me if I'm wrong, but is the rule of law that it is reasonable for police to use deadly force when any citizen who legally carries a gun runs and won't drop it on command? How do you write — Well, I think you have to look at the totality of the facts and the circumstances. I know, but I'm just worried about writing it that it's going to be always reasonable if, key facts, a person with gun knows police are facing them but instead flees with gun. Can the police — is it always reasonable to shoot them? I think there has to be a presence of danger to others or to the police. But isn't there always a presence of danger if a bystander is driving by? In other words, it gets — Well, I guess it depends on the circumstances. Here you had a school, here you had people in the vicinity, and here you had proximity. That's a hard decision. So I think to say, well, it was only reasonable for Greene to shoot a citizen who has a gun, legally or not, who chooses mistakenly, tragically, to not obey the police and run because there's a school or because there's a car, what's — see what I'm struggling with? Well — When would it be unreasonable if there hadn't been this car or a school? I think it's presumptively reasonable, it's objectively reasonable here to conclude that the suspect posed a threat. Was Louisiana open carry in March of 2019? That I don't know. That I don't know. This issue of open carry did not come up in the trial court. It was never an issue. Well, I — you know, I mean, I agree it's theoretically relevant, but I think open carry is a pretty new — pretty new asset. And Judge Jones, open carry presumes that you're not openly carrying a weapon and threatening people with it and presenting yourself in a dangerous scenario to others. No, but I think — I think it's probably relevant, what Judge Higginson says is relevant, but it's only relevant if Louisiana was open carry at the time of the incident. But you're right. If — you're — you're — you're right. The other fact for this gentleman is there was a 911 call, that he brandished it. Brandished a gun. But those — so there are lots of little relevant facts if we were to say dispositively it's reasonable for police to use deadly force when a person flees with a gun. I'm just struggling with that. I'm not questioning what I think you're going to get to as argument number two as an independent and sufficient answer for qualified immunity. Sure. And the Supreme Court and this court has frequently commented that all these use of force Fourth Amendment cases are very fact-intensive. They're not all cookie-cutter and they're not all the same. And this, in my view, presents a set of facts in which the court can conclude that it's presumptively reasonable that the use of force is appropriate and constitutionally permissible because of the threat of danger of somebody running towards a school, disobeying every command to drop the gun, get back in the car, has an extended clip on this handgun and won't stop. And he's running towards a school. And Officer Green said in his internal affairs and state police interviews that he was not aware that that school was closed. And so he reasonably believed he was headed towards a school at the time. And the Garcia case that Judge Duncan, you authored, you wrote that the Fifth Circuit has never required officers to wait until a defendant turns towards them with a weapon in hand before applying deadly force to ensure their safety. So the same thing holds true here. He's running with the gun. We're not to wait until he turns and faces Officer Green. And not only that, he gets shot, he falls down, I think, or falls down and picks up the gun again. And headed towards Eden Apartments, Judge. Exactly. Where this threat originated from Mr. Johnson. So under those facts, Johnson refused repeated commands. He could have turned at any time and fired his weapon. And so under those facts, I think it's objectively reasonable to conclude that there's no constitutional violation as Judge Dougherty concluded here. Secondly, even if there is a quote unquote constitutional violation, there is no violation of clearly established law. We all know that qualified immunity cannot be defined at a high level of generality. Existing precedent must have placed the question beyond debate. Excessive force cases often turn on split-second decisions to use lethal force, which means the law must be so clearly established that in the blink of an eye, in the middle of a high-speed chase, every reasonable officer would know it immediately. We pointed to the case of Lewis v. Hoover, which is a Western District case, came out in May of 2020 after this incident in March of 2019. But very similar facts, the court said there was no clearly established law. In that case, the judge determined it was not clearly established law not to shoot a suspect fleeing by foot, fooling with a gun, and to refuse to drop it. Here we have a person who is fleeing by foot, refused to drop it. And whether we're fooling with a gun, as in the Hoover case, or simply running with the gun and carrying the gun, in either instance, the court recognized it was not clearly established law in the Fifth Circuit that under these facts, the use of force was a constitutional violation such that every reasonable officer should know it. Did the officer notice whether he had his finger in the trigger? Well, he was carrying it in his right hand the entire time. Well, I know. And I think you can tell when he jumps out of the vehicle. If you look at the dash cam video, you can tell he's got it held in his right hand such that you can only conclude that his finger, if it wasn't on the trigger, it's in close proximity to that trigger, he could turn and shoot at any time. So the plaintiff only relied essentially on the Amador case for a violation of clearly established law. All the other cases that the plaintiff cited to essentially support our contention. First of all, no constitutional violation and no clearly established law. All the cases that they cited to, other than Amador. And how is Amador distinctly different than our case? First of all, it came out after March 19th of 2019. Secondly, the facts are not the same. In Amador, the gentleman had his hands raised in the air, he had a knife in one hand, he was essentially motionless, and he was 30 feet away from deputies who engaged in this protracted standoff with him, and they essentially looked at each other and then turned and fired. And this court decided that that was excessive force, a violation of Mr. Amador's constitutional rights. And I would respectfully submit that that case is not our case. That's not our case. Our case, Mr. Johnson's in motion, he's running with a gun, disobeying all commands, heading towards the school, heading towards cars, turns towards Officer McKinney, McKinney's hearing shots, and keep in mind, I've neglected to mention, while Green's chasing him, he's saying, shots fired, shots fired, gun. And McKinney's hearing that. And so he sees Johnson come around after he's gotten to the school and made a turn, and he hears these shots. He reasonably concluded that Johnson might be firing on Officer Green. What is the evidence in the record with respect to the school being closed? How long was it closed? For a few months. Well, okay, so for a few months. Is there any countervailing evidence with respect to the officer's knowledge of the school being closed? The only thing that Officer Green testified to on that, and just in candor to the court, the IA interview and the state police interview, which were done contemporaneous with the shooting event, he said that he did not know that the school was closed. In his deposition, he said he could not recall. Now, the deposition was a year and a half later, but he just said, I don't recall what I said or whether I knew that the school was closed or not. But importantly, in the IA interview and the state police interviews done shortly after the shooting, he said, I did not know that the school was closed, and I saw him running towards the school. I feared for my life. I feared for other people in the area. And keep in mind, another thing that's not coming, Officer Green testified that there were other people in the vicinity that he saw. So all of those factors, I think, lend themselves to either outcome here, which is no constitutional violation, and even if, arguably, there might be a constitutional violation, that under these facts, the law was not clearly established such that every reasonable officer would know that Green and McKinney took actions that were in violation of Mr. Johnson's constitutional rights. So based on all of that, I respectfully ask that the court affirm the decision granting summary judgment to Officers Green and McKinney and the city of Bassarab in this case. Thank you. Mr. McQuarrie, any rebuttals? If I may please the court, I'll take any questions. If not, I'll submit. Guess no questions. We have your argument. Thank you. Thank you. All right. It's a wise man who knows when not to do rebuttal.